IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WHITEAMIRE CLINIC, P.A., INC., individually and as the representative of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>QUILL CORPORATION, QUILL, LINCOLNSHIRE, INC., and JOHN DOES 1-10,<br><br>Defendants. | No. 12 C 5490<br><br>District Judge Elaine E. Bucklo<br><br>Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER

At issue here is the motion of plaintiff, Whiteamire Clinic, P.A. ("Whiteamire"), to compel Quill Corporation, Quill, Lincolnshire, Inc., and other unknown defendants (collectively, "Quill" or "defendants") to respond to various discovery requests contained in plaintiff's First and Second Requests for Production and First Set of Interrogatories (doc. # 24: Pl.'s Mot. to Compel). For the reasons that follow, we grant plaintiff's motion.

### I.

We begin with a brief summary of the history of this case. On June 8, 2012, plaintiff filed a complaint against defendants alleging that Quill violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and committed conversion by sending unsolicited facsimiles to Whiteamire and a class of similarly situated persons without prior express invitation or permission, and without a proper opt out notice (doc. # 1: Compl. at ¶¶ 15-18). For its TCPA claim, plaintiff alleges a class consisting of:

> All persons who (1) on or after four (4) years prior to the filing of this complaint, (2) were sent telephone facsimile messages of material advertising the

commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendants did not have an established business relationship ["EBR"], and (5) which did not display a proper opt out notice.

(Compl. at ¶ 20).[1] In Exhibit A to the complaint, plaintiff attached two facsimiles that it received from Quill. Both faxes contained two pages: (1) a cover letter from Quill to an employee of plaintiff indicating that the employee had given permission to Quill to send the facsimile; and (2) a faxed one-page advertisement for Quill products, with small, printed language on the bottom of the advertisements stating: "This promotional message was sent by Quill Corporation. If you prefer not to receive future fax communications from Quill, call 800-789-1331" (Compl., Ex. A).

On November 27, 2012, plaintiff filed a motion to compel defendants to respond to various requests plaintiff submitted in its First and Second Requests for Production and First Set of Interrogatories. Specifically, plaintiff argues that Quill should be compelled to respond to: requests numbered 1 through 48 (out of 54) in the First Requests for Production (Pl.'s Mot. to Compel at 6-10; Ex. 1: First Req. for Prod.); requests numbered 1 through 12 (out of 12) in the Second Requests for Production (*Id.* at 10-11; Ex. 3: Second Req. for Prod.); and interrogatories numbered 1, 2, 6-8, and 10-20 (out of 22) (*Id.* at 11-17; Ex. 2: Pl.'s Interrogs.).

Before setting a briefing schedule on the motion, this Court made numerous attempts to resolve these discovery issues with the parties. At a status hearing on December 19, 2012, the parties agreed to enter and continue plaintiff's motion to compel until after they had a face to face meet and confer to discuss various discovery disputes and technological issues raised by certain discovery requests (doc. # 38). At the next hearing before this Court on January 23, 2013, the Court entered and continued plaintiff's motion to compel pending further discussions

---

[1] For its conversion claim, plaintiff seeks a class of "[a]ll persons who on or after five years (5) prior to the filing of this complaint, were sent telephone facsimile messages by or on behalf of Defendants."

2

between the parties (doc. # 46). At the next hearing, on February 13, 2013, the Court again entered and continued plaintiff's motion to compel, as the parties agreed to consider having the Court appoint a third-party neutral to assess data recovery issues (doc. # 47). By March 19, 2013, however, the parties were still unable to agree; since that time, the motion to compel has been fully briefed, including a sur-reply by defendant and plaintiff's rejoinder in response to the sur-reply.

After the motion was fully briefed, the Court made a further attempt to aid the parties in resolving their discovery dispute. After a lengthy hearing on the motion on May 8, 2013, the parties agreed to meet and confer regarding whether certain stipulations (solely for purposes of class certification) could be reached which would permit some of the discovery issues presented on the motion to be deferred (doc. # 58). On May 31, 2013, the parties informed the Court that they were continuing their efforts to reach a stipulation that would allow for the filing of motions for class certification and summary judgment without the need for any substantial additional discovery (doc. # 59). However, during a status hearing on July 9, 2013, the parties informed the Court that they could not reach agreement. We therefore now decide the motion to compel.[2]

## II.

It is well-established that the federal discovery rules permit liberal discovery in an effort to facilitate the trial or settlement of legal disputes. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .

---

[2]At least part of the reason for the ultimate failure to reach agreement was a decision by defendant to seek a stay of the proceedings until a decision was reached in a petition Quill filed before the Federal Communications Commission to repeal 47 C.F.R. §64.1200(a)(3)(iv), which addresses the elements required to inform recipients of facsimile advertisements of their right to opt out of receiving them in the future (*see* doc. # 74: Mot. to Stay). On September 6, 2013, the district judge denied the motion to stay (doc. # 88). Quill has filed a motion to reconsider that ruling (doc. # 91), which was denied on September 23, 2013.

3

Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

"[T]he burden is upon the objecting party to show why a discovery request is improper." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). "If the party fails to make the requisite showing, Federal Rule of Civil Procedure 37 allows the Court to enter an order compelling the party to comply with discovery requests." *Desai v. ADT*, No. 11 C 1925, 2012 WL 1755739, at *1-2 (N.D. Ill. May 11, 2012). "In the context of motions to compel, the Seventh Circuit instructs that a 'district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case.'" *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011) (quoting *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996)). As with all discovery matters, district courts have broad discretion in determining motions to compel. *Id.* (citing *Peals v. Terre Haute Police Dep't*, 535 F.2d 621, 629 (7th Cir. 2008)).

### III.

Quill has produced some documents responsive to plaintiff's first and second requests for production. However, where Quill has produced documents responsive to the requests at issue, the documents produced relate to the named plaintiff only (doc. # 50: Quill Resp. at 4). To the extent the requests seek information as to other potential plaintiffs, Quill argues that the requests are premature and overly broad (*Id.* at 4-7). Quill sets forth three primary arguments in support of this claim: (1) the requests are premature because they seek information that is not necessary for the Court to determine whether a class should be certified in this action; (2) the manner in which defendants store their electronic data is such that requiring retrieval of the information

4

about faxed advertisements sent during the relevant time period would be unduly burdensome, and in the end would not provide the information that plaintiff seeks; and (3) plaintiff's individual and class claims are so tenuous and likely to be defeated that class wide discovery should not yet take place.

We address each of these arguments in turn.

### A.

Quill argues that any requests for information beyond that concerning the named plaintiff are premature because they are not necessary for the Court to determine whether a class should be certified. We disagree. The district court judge did not bifurcate merits discovery from discovery related to class certification, and thus discovery is not limited to that which is relevant to a motion for class certification.

Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.

As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified. The Court suggested that if Quill agreed to give up its challenges as to commonality, numerosity, and typicality for purposes of class certification

only (and instead, focus on a challenge to the adequacy of the class representative plaintiff or other Rule 23(b)(3) considerations), plaintiff may agree to forego many of its class-wide production requests at this time. The parties expended substantial effort pursuing that possibility, but in the end failed to reach agreement on any stipulations that would permit any discovery issues presented in the motion to be deferred. Without any such agreement, Quill may not deprive plaintiff of discovery related to the class while Quill continues to oppose class certification.

**B.**

Quill argues that even if plaintiff's requests are relevant to class certification issues, retrieval of the requested information would be unduly burdensome and expensive due to the manner in which Quill stores electronic data. Under Federal Rule of Civil Procedure 26(b)(2)(C)(iii), a court may limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Quill utilized four interconnected, proprietary systems in connection with sending faxed advertisements during the relevant time period: (1) the LMS system stored templates for promotional offers (advertisements); (2) the DASH system filled in ("populated") the templates; (3) the Quill fax server transmitted the faxed advertisements; and (4) the ODS system stored certain records and information from the DASH system regarding existing and potential Quill customers, including whether a customer was sent a facsimile (Quill Resp. at 6-7). However, Quill asserts that none of these systems retained a copy or image of the "as-sent facsimile offer" to a particular recipient (*Id.* at 5-7). Quill contends that, as a result, it would have to manually sift through information from about several hundred thousand customers to identify who received faxed advertisements, which faxed advertisements they received, and whether at the

6

time the facsimile was sent, the particular fax recipient had an EBR with Quill or had given Quill express permission or consent to send the facsimile advertisement (*Id.*). Quill argues that this process of collecting and reviewing records and information would impose an undue burden, as it would take "thousands upon thousands of hours" to accomplish (*Id.*).

In support of these contentions, Quill submitted an affidavit from Travis Wilbert, the Manager of Information Services for Quill since May 2012 (doc. # 51: Wilbert Aff.). In his affidavit, Mr. Wilbert asserts that he is knowledgeable about the contents, characteristics, and functionalities of the data systems associated with Quill's facsimile marketing efforts (*Id.* at ¶ 3). He described the process needed "to determine which Quill customers may have received facsimiles" in the following broad terms: "individualized searches would have to be written and run on various other programs and data tables, and the associated account records and information would have to be reviewed on a customer-by customer basis" (*Id.* at ¶ 5). Mr. Wilbert estimated that the search would take approximately two hours per customer, of which there were "several hundred thousand," at least (*Id.* at ¶¶ 6-7). At the May 2013 hearing, Quill's attorney described the process as so difficult that attempts to extract the requested information would essentially be "futile."

Plaintiff disputes that a search for responses to its requests would be as burdensome as asserted by Quill and Mr. Wilbert because plaintiff believes the information can be obtained without a cumbersome manual process. Plaintiff has identified an expert, Robert Biggerstaff, whom plaintiff says can review the electronic data and retrieve the necessary information without a manual search (doc. # 52: Pl.'s Reply at 2). At the hearing, plaintiff's attorney stated that this search would be done at plaintiff's expense and pursuant to a protective order, and

7

defendant's expert and attorneys could review the material alongside Mr. Biggerstaff before plaintiff's attorneys would have access to the information.

It is Quill's burden to show why it should be relieved from the requirement of producing discovery that plainly is relevant. *See Rubin*, 349 F. Supp. 2d at 1111. At bottom, Quill's explanation as to why plaintiff is not entitled to discovery is that Quill created a data storage system that is immune from discovery. If accepted, that explanation would create the perverse incentive of encouraging companies to organize their systems and records in a way that make the information contained in them inaccessible except at great burden and cost. Moreover, the consequences to plaintiff for accepting Quill's representations are severe: if Quill's records make it impossible to determine not just who got which advertisement, but even who received any advertisement, that may be the death knell to any class claim.

We conclude that plaintiff is entitled to test Quill's assertions about what can be obtained from its systems. The Court does not find compelling the evidence offered by Quill through the cursory, four-page affidavit from Mr. Wilbert. Indeed, during the May 8 hearing, Quill said it could not agree to a joint review of the databases with Mr. Biggerstaff because Quill does not yet have an expert; that statement does not provide great comfort as to Quill's own view of Mr. Wilbert's level of expertise. Nor do we consider a deposition of Mr. Wilbert to flesh out his affidavit to be a useful exercise.

Even if the Court had more confidence in Mr. Wilbert's conclusions, in these circumstances we would allow plaintiff to test them. It is plain that the four databases have information that is relevant to class certification. *First*, the LMS system stores promotional offer templates, including historical templates (Wilbert Aff. at ¶ 11). At the May 2013 hearing, Quill's attorney stated that it "was his understanding" that the promotional offer templates

included "opt-out language" telling fax recipients how they could opt out of receiving future faxes, and that the language did not change in the fax populating stage. Further, it was his understanding that throughout the class period, the templates contained opt-out language that was similar to, or the same as, the language in Exhibit A to plaintiff's complaint. Quill's attorney also said that not every template was identical, and he was not sure whether or what opt-out language changed between templates. Review of the templates in the LMS system for the class time period will allow plaintiff to determine whether there are any relevant variations in the opt-out language that Quill used in it facsimiles to customers.

*Second*, Quill used the DASH system to populate the offer templates. Although Quill still uses parts of the system, Mr. Wilbert asserted that the facsimile functionality of the DASH system was retired in December 2011. Thus, "[t]he data tables from DASH that would have facilitated the correlation of customer-specific records and information maintained in the ODS system with the promotional-offer templates stored in the LMS system became unavailable" (Wilbert Aff. at ¶ 15). At the May 2013 hearing, Quill's attorney stated that the DASH system does not contain information about what particular facsimile was sent to a particular customer, but that it can confirm that facsimiles were sent to a particular customer. The DASH system also contains historical notes entered by Quill employees that related to, or facilitated, fax communications, including faxed solicitations and advertisements. Plaintiff is entitled to determine whether the notes, or other information in DASH, shed light on whether a particular advertisement was sent to a particular customer on a particular date.

*Third*, the Quill fax server transmitted the faxed advertisements. At the hearing, Quill's attorney stated that all of the faxed transmissions were sent through the internal Quill system and server, and were never farmed out to a third-party service. Quill admitted that it had hundreds of

thousands of customers, and may have sent out hundreds of thousands of faxes, but Quill's attorney stated that, after "extensive discussions" with Mr. Wilbert, he came to understand that the Quill fax server did not retain records of what items were sent. Plaintiff is entitled to determine for itself whether that is so.

*Fourth*, Quill used the ODS system to store certain records and information from the DASH system regarding existing and potential Quill customers, including whether a customer was sent a facsimile, and the name and contact information of the customer (Wilbert Aff. at ¶ 14). At the hearing, Quill's attorney specified that the ODS system does not identify what type of facsimile was sent, whether an advertisement or other facsimile communication. Again, plaintiff is entitled to see if that is the case.

We further conclude that in the circumstances, the best way to allow plaintiff the ability to see whether these databases can be used to identify which customers received which faxed advertisements is by requiring Quill to produce an image of the hard drives of the four systems and allow plaintiff's expert to review the information under the following protocol: (a) the information will be produced pursuant to a protective order that preserves its confidentiality; (b) efforts to retrieve relevant information will be made in the first instance by plaintiff's expert, Mr. Biggerstaff, along with a defense expert and/or defense counsel if Quill chooses to have one participate; (c) the information that is retrieved will not be available to plaintiff's counsel to review until Quill first has an opportunity to review it for responsiveness to the discovery requests; and (d) plaintiff will bear the cost of Mr. Biggerstaff's work.

Contrary to Quill's assertion (Def.'s Resp. at 8), requiring production of images of hard drives is neither prohibited by the Federal Rules nor unprecedented. *See, e.g., Instant Tech., LLC v. DeFazio*, No. 12 C 491, 2013 WL 228685, at *2 (N.D. Ill. Jan. 22, 2013) (ordering production

10

of computer so that party could image hard drive); *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C 1768, 2013 WL 1195829, at *3 (N.D. Ill. June 27, 2012) (discussing order that party produce hard drives of computer for imaging). Moreover, the procedure we have outlined above obviates the objection by Quill of undue burden and expense. It will be plaintiff's expert, Mr. Biggerstaff, who will shoulder the burden for that work, and plaintiff who will foot the bill for it. Quill is free to have an expert and/or its counsel participate in the retrieval process, but it need not do so – Quill will have the comfort of knowing that plaintiff's counsel will not view any information recovered by Mr. Biggerstaff until Quill first has seen it and can assess its responsiveness to the discovery requests. There is no evidence that the databases contain any privileged information. And, while Quill asserts concern about revealing customer and other proprietary information, there is no assertion that plaintiff (or, for that matter, Mr. Biggerstaff) is a competitor of Quill. Information of this type is often produced in a lawsuit such as this one subject to a protective order, and Quill has not explained why a protective order here would not be sufficient to protect any legitimate concerns it may have about proprietary information.

Finally, we reject the proposition that, as Quill puts it, plaintiff is seeking to embark on an unwarranted "fishing expedition" (Def.'s Resp. at 5). It is part and parcel of the discovery process for parties to make discovery requests without knowing what they will get, or indeed, whether they will get anything at all. In that sense, most discovery involves an element of "fishing." Thus, to conclusorily label a discovery request as a "fishing expedition" does little to advance the discussion; the more appropriate inquiry (to continue with the fishing metaphor) is how big a pond is the requesting party allowed to fish in, and what may the requesting party fish for. In this case, the databases contain information that may be relevant – indeed, critical – to plaintiff's attempt to pursue this case on a class basis. To the extent that Quill argues that the

11

pond in which plaintiff seeks to fish for that information is too large, that is a problem of Quill's own making by the way in which it chooses to maintain its records. It is not a basis to deny plaintiff relevant discovery – particularly when the plaintiff is willing to put its money where its mouth is, and to pay for the cost of trying to extract the relevant information from the databases.

### C.

In addition to its relevance and burden objections to plaintiff's discovery requests, Quill also argues that plaintiff's individual and class claims are so tenuous and likely to be defeated that class wide discovery should not yet take place (Defs.' Resp. at 9). We find this argument unpersuasive. Quill has had ample opportunity to file a dispositive motion and Quill has repeatedly represented that it intended to file such a motion, but it has chosen not to do so. We will not hold in abeyance an opinion on plaintiff's motion to compel in anticipation of some motion which Quill has not filed and has no timeline to file.

We address briefly one of Quill's merits claims in particular: that sufficient opt-out language is unnecessary if a faxed advertisement was sent with prior permission or invitation (which Quill says the plaintiff gave) or pursuant to an EBR (which Quill says it had with plaintiff). While the TCPA discusses the opt-out notice that is required in an unsolicited faxed advertisement, the corresponding regulation to the TCPA, 47 C.F.R. § 64.1200(a)(3)(iv), states that proper opt-out notice is required regardless of whether the faxed advertisement was solicited or unsolicited. As the Eighth Circuit recently held, "the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax." *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) (deferring to the FCC's plain-language interpretation of its own regulation). And, as noted above, the district judge denied Quill's motion to stay proceedings during the pendency of their

petition to repeal 47 C.F.R. §64.1200(a)(3)(iv) (doc. # 88). The sufficiency of the opt-out language in Quill's faxed advertisements is a relevant issue for discovery regardless of whether the recipient consented to receive the fax or whether the recipient had an EBR with Quill.

IV.

Finally, we address a few remaining bones of contention between the parties. Quill objects to Plaintiff's First Request for Production of Documents numbers 4-6, which seek documents and correspondence relating to Quill's insurance policies and coverage, on the ground that those documents are privileged and not relevant to issues related to class certification (Quill Resp. at 8). Quill ignores that Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires that a party must provide "for inspection and copying . . . any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). The Court orders Quill to produce responsive documents by October 13, 2013.

In addition, plaintiff seeks to compel defendant to answer interrogatories 1, 2, 6-8, and 10-20 (Pl.'s Mot. at 11). Quill briefly responds to plaintiff's argument that "[m]any of Plaintiff's allegations regarding Quill's responses to Plaintiff's interrogatories are now moot" in light of their supplemental responses (Quill Resp. at 9). However, in its supplemental responses, Quill provided further information as to interrogatories 1 and 6, but Quill did not expand its answers to the other interrogatories beyond answers that applied to the named plaintiff (Quill Resp., Ex. 3: Supp'l Resp. to Pl.'s Interrogs.). We have rejected Quill's contention that class discovery is premature, and as a result, we order it to answer these interrogatories. The parties shall meet and confer about a timetable in which to do so.

## CONCLUSION

For the forgoing reasons, this Court grants plaintiff's motion to compel Quill to respond to various requests plaintiff submitted in its First and Second Requests for Production and First Set of Interrogatories (doc. # 24). The parties shall meet and confer with the goal of agreeing to a protocol and protective order as outlined in this order, as well as a date for providing further interrogatory responses. The parties shall file a proposed protocol and protective order by October 4, 2013; to the extent it is not agreed, the filing shall identify any areas of disagreement and each side's position on the areas of disagreement.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: September 24, 2013**